IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| MARION TEAGUE | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 5:07-cv-192 |
| V. | § | |
| | § | JURY REQUESTED |
| C.R. BARD, INC. & | § | |
| DAVOL, INC. | § | |
| | § | |
| *Defendant*. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Comes now Marion Teague, Plaintiff and for his complaint against Defendants C.R. Bard, Incorporated and Davol, Incorporated would respectfully show the Court as follows:

## A. NATURE OF THE ACTION

1. Plaintiff brings this action against C. R. BARD, INC. (hereinafter "BARD") and its wholly owned subsidiary, DAVOL, INC. (hereinafter "DAVOL") for their sale and distribution of defective mesh hernia repair patches. Defendants' defective product was surgically implanted into the body of Plaintiff. The mesh presents an unreasonable and substantial risk of injury and/or death to Plaintiff.

## B. PARTIES

2. Plaintiff MARION TEAGUE resides in and maintains citizenship in Hempstead County, Arkansas.

3. Defendant C.R. BARD, INC. ("Bard") is a New Jersey Corporation with its principal place of business at 730 Central Avenue, Murray Hill, New Jersey, 07974, and at all relevant times designed, manufactured, marketed, supplied and sold to distributors, physicians, hospitals and medical practitioners certain hernia repair mesh to be surgically implanted in patients throughout the Untied States, including the states of Texas and Arkansas. Bard may be served with process by serving its registered agent for service, C.T. Corporation System, at 350 N. St. Paul, Dallas, Texas 75201.

4. Defendant DAVOL, INC. ("Davol") is and was at all relevant times a wholly owned subsidiary of Bard, with its principal place of business at 100 Sockanosset Crossroads, P.O. Box 8500, Cranston, Rhode Island, 02920. Davol may be served with process via its registered agent in Rhode Island at C.T. Corporation System, 10 Weybosset Street, Providence Rhode Island 02903. At all times relevant, Davol was a corporation duly organized and existing under the laws of the state of Delaware with its principle place of business for manufacturing hernia surgical repair products in Cranston, Rhode Island. Davol designed, manufactured, marketed, supplied and sold to distributors, physicians, hospitals and medical practitioners certain hernia repair mesh to be surgically implanted in patients throughout the Untied States, including the states of Texas and Arkansas.

## C. **JURISDICTION AND VENUE**

5. The Court has personal jurisdiction over Defendants Bard and Davol because they engage in continuous and systematic activities within Texas, specifically within Bowie County, Texas, where the product that forms the basis of this action was surgically implanted into Plaintiff. Defendants purposefully avail themselves of the privileges and benefits of conducting business in Texas by distributing, recommending, merchandising, advertising, promoting,

supplying and selling to distributors, physicians, hospitals and medical practitioners certain hernia repair mesh to be surgically implanted in patients throughout Texas.

6. This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(a)(1) because the parties are completely diverse and the amount in controversy exceeds $75,000, excluding interests and costs.

7. Venue is proper in this Court under 28 U.S.C. 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of Texas. Specifically, the product that forms the basis of these claims was surgically implanted into Plaintiff in Bowie County, Texas.

## C. <u>CONDITIONS PRECEDENT</u>

8. All conditions precedent have been performed or have occurred.

## D. <u>FACTS</u>

9. Plaintiff underwent multiple surgeries in Bowie County, Texas, to repair abdominal hernias with mesh that was designed, manufactured, and sold by Defendants. In September 2006, Plaintiff began having abdominal pain and inflammation. As a result of a series of surgeries, it was discovered that the mesh used to repair his hernias was badly infected. Surgery was required to remove the infected mesh.

10. At all material times, Defendants were in the business of designing, manufacturing, and marketing hernia repair mesh. Defendants designed and manufactured the hernia repair mesh at issue.

11. The discovery rule is applicable as Plaintiff could not have discovered the existence of the defect in the subject mesh until at least September, 2006.

## E. CAUSES OF ACTION

### (1) Count 1 – Strict Products Liability

12. The hernia repair mesh caused the injuries and damages claimed herein due to design, manufacturing and marketing defects. The design defect existed at the time that the mesh left Defendants' possession and rendered it unreasonably dangerous for its intended and foreseeable use considering the utility and risks involved in the mesh's use. At the time that the mesh left Defendants' possession, there were safer alternative designs, other than the design used in the subject mesh that would have prevented or significantly reduced the risk of Plaintiff's injuries. At the time the mesh left Defendants' possession, said alternative designs were both economically and technologically feasible. The manufacturing defect existed at the time the mesh left Defendants' possession and rendered it unreasonably dangerous for its intended and foreseeable use considering the utility and risks involved in the mesh's use. The marketing defect existed at the time the mesh left Defendants' possession and rendered it unreasonably dangerous due to the lack of adequate warnings or instructions to prevent or reduce the risk of Plaintiff's injuries.

13. These defects were producing causes of the injuries and damages that Plaintiff suffers.

### (2) Count 2 – Negligence

14. With regard to the design, manufacture and marketing of the hernia repair mesh, Defendants through their officers, agents, employees and representatives made commissions and omissions that amount to negligence. Said acts and omissions include but are not limited to:

a. designing, then marketing the hernia repair mesh when it knew or should have known that its design rendered it unreasonably dangerous for its intended and foreseeable use;

b. failing to implement designs to the hernia repair mesh that it knew or should have known would make it less prone to the type of malfunction that gives rise to this action;

c. failing to implement adequate warnings or instructions when it knew or should have known that such would prevent or reduce the risk of Plaintiffs' injuries;

d. Failing to monitor its manufacturing process and/or implement a quality assurance process adequate to prevent defectively designed and manufactured mesh from reaching consumers.

15. These acts and omissions constitute a breach of the standard of care and duty that Defendants owe to Plaintiff and were a proximate cause of Plaintiff's damages and injuries.

**(3) <u>Count 3 - Breach of Implied Warranty</u>**

16. Plaintiff alleges and incorporates by reference each and every allegation contained in this Complaint as though fully set forth herein.

17. Defendants are liable to Plaintiff for their breach of implied warranty in the following respects:

(a) Defendants sold the hernia repair mesh which was implanted in the Plaintiff. Defendants impliedly warranted to Plaintiff, Plaintiff's physicians and healthcare providers, that the mesh was of merchantable quality and safe for the use for which it was intended.

(b) Defendants knew or should have known that the mesh at the time of sale was

intended to be used for the purpose of surgically implanting it into the body for hernia repair.

(c) Plaintiff, Plaintiff's physicians and health care providers reasonably relied on Defendants' judgment, indications and statements that the mesh was fit for such use.

(d) When the mesh was distributed into the stream of commerce and sold by DAVOL and BARD, it was unsafe for its intended use, and not of merchantable quality, as warranted by Defendants, in that it had dangerous propensities when used as intended and implanted into a patient's body where it could cause serious injury of harm or death to the patient.

(e) Plaintiff suffered such injuries and damages as a result of Defendants' conduct and actions.

## F. DAMAGES

18. As a result of the unreasonably dangerous mesh and the acts and omissions of Defendant, as set forth above, Plaintiff has been damaged significantly, including but not limited to the following:

a. Physical pain and mental anguish in the past and future;

b. Disfigurement in the past and future;

c. Physical impairment in the past and future;

d. Medical expenses in the past and future;

e. Lost wages in the past and future;

f. Damage to earning capacity; and

g. Loss of household services in the past and future.

## G. JURY DEMAND

19. Plaintiff respectfully requests that a jury be convened to decide the factual issues presented in this action and tenders the required jury fee.

## H. PRAYER

20. Wherefore premises considered, Plaintiff prays that Defendants be cited to appear and answer herein, that this action be set down for trial by jury, and that Plaintiff have and recover a judgment from Defendants for his damages in such amount as the jury may determine proper together with prejudgment and postjudgment interest, costs of suit, attorney fees and such other and further relief to which Plaintiff shows himself entitled.

Respectfully submitted,

*/s/ Carly Slack Anderson* .

Carly Slack Anderson
Texas Bar No. 24027861
PATTON, TIDWELL & SCHROEDER, L.L.P.
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
(903) 792-7080
(903) 792-8233 (fax)